**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **MAY 2 1 2015**

*Madsen, CJ*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on May 21 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| CANNABIS ACTION COALITION, ARTHUR WEST, DAVID HALLIN, <br><br> Plaintiffs, <br><br> STEVE SARICH, JOHN WORTHINGTON, and DERYCK TSANG, <br><br> Petitioners, <br><br> v. <br><br> CITY OF KENT, a local municipal corporation, KENT CITY COUNCIL, KENT MAYOR, STATE OF WASHINGTON, <br><br> Respondents. | NO. 90204-6 <br><br><br> EN BANC <br><br><br><br> Filed ___ **MAY 2 1 2015** ___ |

STEPHENS, J.—Under the Washington State Medical Use of Cannabis Act (MUCA), chapter 69.51A RCW, qualifying patients may participate in "collective gardens" to pool resources and grow medical marijuana for their own use. RCW

69.51A.085(1).[1] However, MUCA grants cities and towns the power to zone the "production, processing, or dispensing" of medical marijuana. RCW 69.51A.140(1). Given this state law, the city of Kent enacted a zoning ordinance that prohibits collective gardens within its city limits. City of Kent Ordinance 4036 (June 5, 2012) (codified at KENT CITY CODE 15.02.074, 15.08.290) (Ordinance).

This case requires us to determine whether MUCA preempts the Ordinance. We hold it does not and affirm the Court of Appeals. The Ordinance is a valid exercise of the city of Kent's zoning authority recognized in RCW 69.51A.140(1) because the Ordinance merely regulates land use activity.

## I. BACKGROUND

### A

In 1971, the Washington Legislature enacted the Uniform Controlled Substances Act, chapter 69.50 RCW. That statute made it a crime to manufacture, deliver, and possess marijuana. RCW 69.50.401-.445. The same activities are criminalized under federal law. 21 U.S.C. ch. 13. But Washington has had subsequent legal developments concerning medical marijuana and recreational marijuana. In 1998, the people adopted Initiative 692, LAWS OF 1999, ch. 2, to provide protections for medical marijuana use. And in 2012, the people adopted Initiative 502, LAWS OF 2013, ch. 3, to create a system for the licensed distribution

---

[1] While this appeal was pending, the legislature enacted comprehensive reform concerning the regulation of medical marijuana in Washington. LAWS OF 2015, ch. 70. That new law repeals the two statutory provisions at issue in this case. *See id.* § 48 (repealing RCW 69.51A.140), § 49 (repealing RCW 69.51A.085). This opinion concerns the law as it existed prior to the 2015 enactment. All references to statutes in this opinion refer to the statutes as they existed prior to the 2015 enactment.

of recreational marijuana and to legalize the possession of marijuana in certain circumstances. *See* RCW 69.50.4013(3). Initiative 502 is not relevant to this case because no party seeks to produce marijuana pursuant to a recreational marijuana producer's license. *See* RCW 59.50.325(1). This case concerns Washington's medical marijuana system.

Washington's medical marijuana system is codified as MUCA, chapter 69.51A RCW. Initially, the statute provided qualifying medical marijuana users an affirmative defense to criminal prosecutions. Former RCW 69.51A.040(2)-(3) (2010). That defense was satisfied upon compliance with the terms of the chapter, such as meeting the definition of being a "qualifying patient," having "valid documentation" from a "health care professional," having the appropriate quantity of marijuana, and satisfying other conditions. *Id.*; former RCW 69.51A.010(2) (2010).

The legislature amended MUCA in 2011. *See* LAWS OF 2011, ch. 181. But the bill the legislature passed differs significantly from the enacted law because Governor Gregoire vetoed 36 of the bill's 58 sections. *See id.* at 1374-76 (governor's veto message). As passed by the legislature, the bill would have created a comprehensive regulatory scheme under which all patients, physicians, processors, producers, and dispensers could be securely and confidentially registered in a database maintained by the Washington Department of Health. *See id.* § 901 (later vetoed). Registration would have been optional. *Id.* § 901(6) (later vetoed). If a patient registered, the patient would not be subject to state prosecution or civil

consequences for marijuana-related offenses. *Id.* § 401 (codified at RCW 69.51A.040). But if the patient did not register, the patient would be entitled to only an affirmative defense to marijuana prosecutions. *Id.* § 402 (codified at RCW 69.51A.043).

In addition to the registration system, the bill authorized collective gardens and clarified that local jurisdictions retain their zoning power over medical marijuana activities. Under the bill, qualifying patients could establish collective gardens for the purpose of growing medical marijuana for personal use. *Id.* § 403 (codified at RCW 69.51A.085). Participating in a collective garden involves "sharing responsibility for acquiring and supplying the resources required to produce and process cannabis for medical use," such as by providing real estate, equipment, supplies, or labor for the collective garden. *Id.* § 403(2) (codified at RCW 69.51A.085(2)). Last, the bill clarified that local governments retain authority to regulate the production, processing, or dispensing of medical marijuana through zoning, business licensing, health and safety requirements, and business taxes. *Id.* § 1102 (codified at RCW 69.51A.140).

After the legislature passed the bill and sent it to Governor Gregoire for her approval, the United States attorneys for the Eastern and Western Districts of Washington wrote the governor a letter. It warned that the legislature's bill authorized conduct illegal under federal law, noted that Washington State employees who administered the registry would not be immune from federal prosecution, and threatened such prosecution. *Cannabis Action Coal. v. City of Kent*, 180 Wn. App.

455, 464, 322 P.3d 1246 (2014). Governor Gregoire vetoed all of the bill's sections that could have subjected state employees to federal charges, most importantly the establishment of the bill's centerpiece, the registration system. She did not veto the provision concerning collective gardens, RCW 69.51A.085, or the provision concerning local zoning requirements, RCW 69.51A.140. She explained her decision in an official veto message. LAWS OF 2011, ch. 181, at 1374-76.

Against this state law backdrop, in 2012 the city of Kent enacted the Ordinance at issue. Styled as a zoning ordinance, it prohibits collective gardens (largely as defined in RCW 69.51A.085) in every zoning district within the city and deems any violation a nuisance per se that shall be abated by the city attorney. KENT CITY CODE 15.02.074, 15.08.290. The city may enforce the Ordinance with criminal and civil sanctions. *Id.* ch. 1.04.

## B

The Cannabis Action Coalition, Steve Sarich, Arthur West, John Worthington, and Deryck Tsang (collectively plaintiffs) sued the city of Kent, its city council, and its mayor Suzette Cook (collectively Kent) in King County Superior Court, seeking to have the Ordinance declared preempted and invalid. On competing motions for summary judgment, the superior court ruled in Kent's favor and upheld the Ordinance. It also dismissed the claims of Sarich, West, and Worthington for lack of standing because these plaintiffs did not reside or operate a collective garden in the city of Kent. The court determined that Tsang had standing

because he currently participates in a collective garden in the city of Kent's limits. The court enjoined all plaintiffs from violating the Ordinance.

Sarich, Worthington, and Tsang appealed. Recognizing that Tsang's standing to appeal was never in doubt, the Court of Appeals held that Sarich and Worthington also had standing to appeal because they were burdened by the trial court's injunction prohibiting them from violating the Ordinance. *Cannabis Action Coal.*, 180 Wn. App. at 469 n.11. On the merits, the Court of Appeals affirmed the superior court and held state law does not preempt the Ordinance. *Id.* at 469-83. We granted the plaintiffs' petitions for review. *Cannabis Action Coal. v. City of Kent*, 181 Wn.2d 1022, 336 P.3d 1165 (2014).

## II. ANALYSIS

### A

The Washington constitution grants every local government the power to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11. This court has established that an ordinance is valid under this provision "unless: (1) the Ordinance conflicts with some general law; (2) the Ordinance is not a reasonable exercise of the [local government's] police power; or (3) the subject matter of the Ordinance is not local." *Weden v. San Juan County*, 135 Wn.2d 678, 692-93, 958 P.2d 273 (1998). Under this test, "a heavy burden rests upon the party challenging [the ordinance's] constitutionality" and "'[e]very presumption will be in favor of constitutionality.'" *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 477, 61 P.3d

1141 (2003) (quoting *Lenci v. City of Seattle*, 63 Wn.2d 664, 668, 388 P.2d 926 (1964)). "Whether an ordinance is reasonable, local, or conflicts with a general law for purposes of article XI, section 11 is purely a question of law subject to de novo review." *Weden*, 135 Wn.2d at 693.

The plaintiffs do not contend that the Ordinance is unreasonable or nonlocal. They contend only that MUCA is a general law in conflict with the Ordinance—i.e., that MUCA preempts the Ordinance. A state statute may preempt a local ordinance in two ways: it will "preempt[] an ordinance on the same subject if the statute occupies the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance may not be harmonized." *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010).

B

A statute preempts the field and invalidates a local ordinance within that field "if there is express legislative intent to preempt the field or if such intent is necessarily implied . . . from the purpose of the statute and the facts and circumstances under which it was intended to operate." *Id.* Because MUCA has no express preemption clause, we must consider whether field preemption is implied.

We have recognized that when a state statute expressly provides for local jurisdiction over a subject, state law does not impliedly preempt the field of that subject. In *Lawson*, we held the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, did not preempt a local ordinance that prohibited recreational vehicles in mobile home parks. *Lawson*, 168 Wn.2d at 677. We

reasoned that the MHLTA did not preempt the field of manufactured/mobile home regulations because "certain provisions of the MHLTA expressly contemplate some local regulation of manufactured/mobile home tenancies." *Id.* at 680. Likewise here, MUCA expressly contemplates local regulation of medical marijuana. It provides that cities and towns may adopt and enforce "any of the following pertaining to the production, processing, or dispensing of cannabis or cannabis products within their jurisdiction: Zoning requirements, business licensing requirements, health and safety requirements, and business taxes." RCW 69.51A.140(1). Given this express state law recognition of local jurisdiction over medical marijuana regulation, we must conclude that MUCA does not impliedly preempt the field of medical marijuana. *Lawson*, 168 Wn.2d at 680.

## C

Under our conflict preemption precedents, a state law preempts a local ordinance "when an ordinance permits what state law forbids or forbids what state law permits." *Id.* at 682. We will find state law to preempt an ordinance only if the ordinance "'directly and irreconcilably conflicts with the statute.'" *Id.* (internal quotation marks omitted) (quoting *HJS Dev., Inc.*, 148 Wn.2d at 482). Though the rule may be easily stated, the analysis is often nuanced. *Compare, e.g., Entm't Indus. Coal. v. Tacoma-Pierce County Health Dep't*, 153 Wn.2d 657, 105 P.3d 985 (2005), and *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 90 P.3d 37 (2004), *with Lawson*, 168 Wn.2d 675, and *Weden*, 135 Wn.2d 678.

Whether MUCA conflicts with the Ordinance turns on the scope of Kent's power to zone medical marijuana activities under RCW 69.51A.140(1). Kent argues RCW 69.51A.140(1) authorizes the Ordinance because the Ordinance is a zoning regulation of "the production, processing, or dispensing" of medical marijuana. The plaintiffs respond that RCW 69.51A.140(1) is irrelevant to collective gardens because RCW 69.51A.140(1) applies only to "*commercial* producers, processors, or dispensaries *that would have been licensed* under the proposed regulatory scheme." Tsang's Suppl. Br. at 17. Thus, in the plaintiffs' view, MUCA irreconcilably conflicts with the Ordinance because MUCA grants a right to engage in a collective garden under RCW 69.51A.085, yet the Ordinance prohibits the same activity. Ultimately, Kent is correct. A city's zoning power under RCW 69.51A.140(1) is not limited to commercial, licensed producers. RCW 69.51A.140(1)'s plain text, and its statutory context, demonstrate that it provides local jurisdictions the authority to enact zoning requirements pertaining to the land use activity of participating in a collective garden.

RCW 69.51A.140(1)'s relevant text draws no distinction between commercial and noncommercial operations. Its terms are undefined, so we give them their plain and ordinary meaning. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998). The plain and ordinary meaning of RCW 69.51A.140(1)'s provision that a city may adopt zoning requirements for the "production, processing, or dispensing" of medical marijuana provides no reason to limit these concepts to only commercial activities. *See* WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 653 (2002) (defining "dispense" to include "to deal out in portions : DISTRIBUTE, GIVE, PROVIDE"; "to deal with : HANDLE"; and "to prepare and distribute (medicines) to the sick"); *id.* at 1808 (defining "process" to include "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result"), 1810 (defining "produce" to include "to . . . create, or bring out by intellectual or physical effort"). No doubt, these words can carry a commercial meaning, but they can also carry the broader meanings quoted above. Because the legislature choose to use these capacious words without providing textual limitations to them, such as *"commercial* production" or *"licensed* production," we give effect to the broad meaning of the words chosen. Someone growing medical marijuana in a collective garden "produc[es]," "process[es]," and "dispens[es]" (RCW 69.51A.140(1)) medical marijuana just the same as someone in a commercial operation does, albeit not to seek a profit but rather to grow, share, and use the marijuana within the small community of collective garden participants.[2]

---

[2] Though vetoed by Governor Gregoire, the legislature's original bill defined "dispense," "process," and "produce" in their broadest sense. *See* LAWS OF 2011, ch. 181, § 201(8), (21), (23); *id.* ch. 181, at 1374 (governor's veto message). The vetoed definition of "process" ("to handle or process cannabis in preparation for medical use") and of "produce" ("to plant, grow, or harvest cannabis for medical use") plainly are not limited to a commercial context. *Id.* § 201(21), (23). And the vetoed definition of "dispense" ("the selection, measuring, packaging, labeling, delivery, or retail sale of cannabis by a licensed dispenser to a qualifying patient or designated provider") also includes various activities that occur in the noncommercial context of a collective garden, for example measuring and packaging marijuana. *Id.* § 201(8). Moreover, its definition expressly uses "licensed dispensers" as a modifier of only *one* meaning of "dispense," not the others. *Id.* Nonetheless, we need not and cannot rely on these definitions because upon being vetoed, they "'now mean[] nothing whatsoever. In exercising the veto power, the governor acts as a part of the legislative bodies, and the act is to be considered now just as it would have

Indeed, elsewhere RCW 69.51A.140(1) *does* distinguish between licensed and nonlicensed producers. In a later sentence not directly at issue here, RCW 69.51A.140(1) provides that a city's zoning requirements cannot "preclude the possibility of siting *licensed dispensers* within the jurisdiction." RCW 69.51A.140(1) (emphasis added). Yet RCW 69.51A.140(1)'s first sentence, which is at issue in this case, makes no limitation that a city's zoning requirements pertaining to the "production, processing, or dispensing" of medical marijuana must be limited to only "licensed dispensers." Where the language of a statute differs, we presume the difference is intentional and give the difference effect. *State v. Tracer*, 173 Wn.2d 708, 718, 272 P.3d 199 (2012). Accordingly, the statute's first sentence is not limited to zoning requirements over only licensed producers.[3]

---

been if the vetoed provisions had never been written into the bill at any stage of the proceedings.'" *Hallin v. Trent*, 94 Wn.2d 671, 677, 619 P.2d 357 (1980) (quoting *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 408, 25 P.3d 91 (1933)).

[3] As Governor Gregoire noted in her veto statement, it appears true that RCW 69.51A.140(1)'s second sentence—i.e., that zoning requirements cannot preclude the possibility of licensed dispensers within the jurisdiction—is "without meaning in light of the vetoes of sections providing for such licensed dispensers." LAWS OF 2011, ch. 181, at 1375. Nonetheless, the governor's choice to not veto the entire section of RCW 69.51A.140 signifies that she intended the remaining portions to retain their natural effect. Contrary to the plaintiffs' view that the entirety of RCW 69.51A.140 "is an orphaned section without effect," Tsang's Suppl. Br. at 17, we will not interpret the rest of the section in a manner that renders it superfluous, *In re Pers. Restraint of McWilliams*, 182 Wn.2d 213, 217, 340 P.3d 223 (2014). In other words, had Governor Gregoire intended that a local jurisdiction's zoning power cover *only* licensed operations and *not* cover nonlicensed collective gardens, she simply would have vetoed the entire section. But she did not do so, demonstrating that she intended local jurisdictions to have the power to zone nonlicensed medical marijuana land uses. Indeed, elsewhere in her veto statement, Governor Gregoire endorsed local zoning of medical marijuana. LAWS OF 2011, ch. 181, at 1376 (stating she remains open to new exemptions from state prosecutions, "conditioned on compliance with *local government location* and health and safety *specifications*" (emphasis added)).

The statutory context also refutes the plaintiffs' contention that a city's zoning powers under RCW 69.51A.140(1) do not include imposing zoning requirements for collective gardens. Under MUCA, a collective garden exists when individuals "participate in collective gardens for the purpose of *producing, processing, transporting, and delivering* cannabis for medical use." RCW 69.51A.085(1) (emphasis added). Thus, because RCW 69.51A.140(1) authorizes a city to enact zoning requirements pertaining to the "production" and the "processing" of medical marijuana, and because collective gardens are defined to include "producing" and "processing" medical marijuana, the statutory context strongly confirms that a city's power under RCW 69.51A.140(1) is not limited to commercial or licensed producers but also includes noncommercial collective gardens. *State v. Coley*, 180 Wn.2d 543, 553, 326 P.3d 702 (2014) (noting that we must consider the context of the statute, related provisions, and the statutory scheme as a whole).

In sum, we reject the plaintiffs' argument that RCW 69.51A.140(1) reaches only commercial activities. Instead, this provision recognizes that a city may enact zoning requirements pertaining to all production, processing, and dispensing of medical marijuana.

The remaining question is whether the Ordinance is otherwise consistent with state law. Because the legislature ensured that cities have the power to adopt "zoning requirements"—but did not grant carte blanche to opt out of all medical marijuana activity—a city's ordinance under RCW 69.51A.140(1) must concern a land use. Here, the Ordinance does concern a land use. It adopts zoning requirements for "the

growing, production, processing, transportation, and delivery of cannabis" in a collective garden, if seven conditions defining a collective garden are satisfied. KENT CITY CODE 15.02.074, 15.08.290. As Kent concedes, the Ordinance does "not address personal use of medical marijuana." Suppl. Br. of City of Kent at 4. Instead, the Ordinance concerns only collective gardens wherein up to 10 individuals pool resources to grow medical marijuana in potentially large operations of up to 45 plants and 75 ounces of usable marijuana. KENT CITY CODE 15.02.074(A)-(C).[4] Tsang reports that his collective garden is "located within leased property at the north end of . . . an area zoned M1 for Industrial Park. The building is safe and secured with 24-hour video surveillance, alarm monitoring, electric striking door, and neighbors . . . a private security firm." Tsang's Pet. for Review at 6. Such an operation to produce marijuana, potentially on a large scale, is a land use activity. Accordingly, Kent has properly exercised its authority under RCW 69.51A.140(1) to zone the land use activity involving collective gardens. The Ordinance is consistent with state law and is not preempted.[5]

---

[4] For example, the first condition in the Ordinance's definition of a "collective garden" is that no more than 10 qualifying patients may participate in the collective garden. KENT CITY CODE 15.02.074(A). If 11 qualifying patients were to participate in a collective garden in the city of Kent, the Ordinance would not govern the activity. Thus, Kent correctly concedes that in scenarios where the Ordinance's definition of a "collective garden" is not met, only state law enforcement would be able to prosecute the activity (for potentially exceeding RCW 69.51A.085's authorized definition of a "collective garden"). *See* Wash. Supreme Court Oral Argument, *Sarich v. City of Kent*, No. 90204-6 (Feb. 24, 2015), at 24 min., 26 sec. through 25 min. 3 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://tvw.org.

[5] For the same reasons we conclude that RCW 69.51A.140(1) authorizes the Ordinance, we reject the plaintiffs' argument that RCW 69.51A.085 grants a "stand-alone" or "absolute" right to engage in a collective garden. Also given our conclusion under RCW

-13-

## III. CONCLUSION

Consistent with RCW 69.51A.140(1), a city may adopt zoning requirements pertaining to the land use activity of collective gardens. The Ordinance falls within this local authority and is not preempted by state law. We affirm the Court of Appeals.

---

69.51A.140(1), we need not determine here whether medical marijuana use is "illegal subject to an affirmative defense" or is generally "legal" under state law.

Stephens, J

WE CONCUR:

Madsen, C.J.

_____

Johnson, J

Wiggins, J.

Owens, J

George McCloud, J.

Fairhurst, J.

Yu, J

No. 90204-6

GONZÁLEZ, J. (dissenting)—I agree with the majority that under the Washington State Medical Use of Cannabis Act (MUCA), chapter 69.51A RCW, "a city may enact zoning requirements pertaining to all production, processing, and dispensing of medical marijuana." Majority at 12. But while a city may regulate consistent with MUCA, it may not completely ban what the state permits. Since the majority concludes otherwise, I respectfully dissent.

As the majority recognizes, "state law preempts a local ordinance 'when an ordinance permits what state law forbids or forbids what state law permits.'" Majority at 8 (quoting *Lawson v. City of Pasco*, 168 Wn.2d 675, 682, 230 P.3d 1038 (2010)). The majority declines to determine whether participation in collective gardens is "'llegal subject to an affirmative defense'" or is generally "'legal'" under state law. Majority at 13 n.5. Instead, the majority holds that "[b]ecause the legislature ensured that cities have the power to adopt 'zoning requirements'—but did not grant carte blanche to opt out of all medical marijuana activity—a city's ordinance under RCW 69.51A.140(1) must concern a land use." Majority at 12. Finding that City of Kent Ordinance 4036 (June 5, 2012) (codified at KENT CITY CODE 15.02.074, 15.08.290)

1

(Ordinance) concerns a land use, the majority deems the Ordinance constitutional. *Id.* While the majority's sweeping analysis is logical, the simple fact is that this Ordinance "forbids what state law permits." *Lawson,* 168 Wn.2d at 682. While cities may make zoning regulations that apply to collective gardens, completely prohibiting state protections related to them, whether done directly or in the guise of a zoning regulation, goes too far.

In cases in which the legislature intended to allow local governments to completely prohibit activities allowed by the state, the legislature has been clear. *See, e.g., Edmonds Shopping Ctr. Assocs. v. City of Edmonds,* 117 Wn. App. 344, 356, 71 P.3d 233 (2003) (analyzing RCW 9.46.295, which allows local governments to "absolutely prohibit" state-licensed gambling activities). Given that "'[e]very presumption will be in favor of constitutionality'" of a local ordinance, MUCA's lack of clarity on this issue is not dispositive here. *HJS Dev., Inc. v. Pierce County,* 148 Wn.2d 451, 477, 61 P.3d 1141 (2003) (quoting *Lenci v. City of Seattle,* 63 Wn.2d 664, 668, 388 P.2d 926 (1964)). A further analysis shows, however, that the Ordinance is nonetheless unconstitutional.

If MUCA grants a right to participate in collective gardens, the Ordinance is unconstitutional. A local ordinance is unconstitutional when state law specifically entitles one to engage in an activity prohibited by the local ordinance. *See Entm't Indus. Coal. v. Tacoma-Pierce County Health Dep't,* 153 Wn.2d 657, 664, 105 P.3d 985 (2005) (finding that a local ordinance imposing a complete ban on smoking was

2

invalid because it "prohibits what is permitted by state law: the ability of certain business owners and lessees to designate smoking and nonsmoking locations in their establishments"); *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 433, 90 P.3d 37 (2004) (finding that a local ordinance requiring water fluoridation "is a local regulation that prohibits what state law permits: the ability of water districts to regulate the content and supply of their water systems expressly granted to them by statute"). If MUCA provides a right for people to participate in collective gardens, the Ordinance improperly denies that right and therefore is unconstitutional.

I recognize that generally, when the state creates a licensing system for participation in an activity but does not provide an entitlement to engage in that activity, a local ordinance may completely prohibit that activity. "The fact that an activity may be licensed under state law does not lead to the conclusion that it must be permitted under local law." *Rabon v. City of Seattle*, 135 Wn.2d 278, 292, 957 P.2d 621 (1998); *see Weden v. San Juan County*, 135 Wn.2d 678, 958 P.2d 273 (1998).[1] For example, in *State ex rel. Schillberg v. Everett District Justice Court*, we found that a county ordinance completely prohibiting the use of internal combustion motors on certain lakes in the county did not irreconcilably conflict with a state statute setting

---

[1] The *Weden* majority did not yield to the dissent's position that "[w]here a state statute licenses a particular activity, counties may enact reasonable regulations of the licensed activity within their borders but they may not prohibit same outright" because an ordinance banning the activity "renders the state permit a license to do nothing at all." *Weden*, 135 Wn.2d at 720, 722 (Sanders, J., dissenting).

out licensing requirements for using internal combustion motors on lakes because the statute did not provide that people are entitled to use internal combustion motors on all waters of the state. 92 Wn.2d 106, 108, 594 P.2d 448 (1979). Similarly, in *Weden*, we found that a state statute setting forth license requirements for operating motorized personal watercraft did not grant the right to operate such watercraft on all waters of the state and, therefore, a county was able to completely prohibit the operation of such watercraft in the county. 135 Wn.2d at 694-95.

Unlike the licensing provisions at issue in *Schillberg* and *Weden*, however, even if MUCA provides only that participation in collective gardens is protected as an affirmative defense, the affirmative defense is provided to all Washington citizens and a local ordinance may not eliminate that protection. MUCA provides in relevant part that

> [a] qualifying patient or designated provider who is not registered with the registry established in section 901 of this act, but who presents his or her valid documentation to any peace officer who questions the patient or provider regarding his or her medical use of cannabis, may assert an affirmative defense to charges of violations of state law relating to cannabis . . . .

RCW 69.51A.043(2) (reviser's note omitted). Clearly participation in collective gardens, addressed in RCW 69.51A.085, is one of the "violations of state law relating to cannabis" protected by an affirmative defense in RCW 69.51A.043(2).

The City of Kent, its city council, and its mayor (collectively Kent) argue that, as the Court of Appeals found, because medical marijuana is generally illegal under state law, a city may entirely prohibit the activity because "[w]ithout question, a

4

municipality's plenary powers include the power to 'enact ordinances prohibiting and punishing the same acts which constitute an offense under state laws.'" *Cannabis Action Coal. v. City of Kent*, 180 Wn. App. 455, 482, 322 P.3d 1246 (2014) (quoting *City of Bellingham v. Schampera*, 57 Wn.2d 106, 109, 356 P.2d 292 (1960) and citing *State v. Kirwin*, 165 Wn.2d 818, 826-27, 203 P.3d 1044 (2009)); *see* Suppl. Br. of City of Kent at 7. Neither *Schampera* nor *Kirwin* address a local ordinance that prohibits what is also an offense under state law but concurrently eliminates a state law affirmative defense. Here, Kent intends to enforce the Ordinance with criminal and civil sanctions and warned Deryck Tsang that it may "seek civil and/or criminal remedies in the courts" in relation to his collective garden, without allowing the MUCA affirmative defense to be raised. Clerk's Papers at 732-33; KENT CITY CODE ch. 1.04. Furthermore, the Ordinance renders MUCA's affirmative defense to state prosecution worthless because a collective garden participant who operates illegally loses the protection of the affirmative defense and the Ordinance causes all collective garden participation in the city of Kent to be illegal. RCW 69.51A.085(3). The Court of Appeals' analysis is flawed because it overlooks that the Ordinance not only prohibits participation in collective gardens, it also eliminates a state law right to assert an affirmative defense in relation to participation in collective gardens. By eliminating the MUCA affirmative defense available to all Washington citizens, the Ordinance unconstitutionally "forbids what state law permits." *Lawson*, 168 Wn.2d at 682.

5

Kent may not eliminate protection provided by the state. Accordingly, I would reverse the Court of Appeals and I respectfully dissent.

*Sarich, et al. v Kent, et al. (Cannabis Action Coal., et al.* Plaintiffs*)*, 90204-6 (González, J., dissenting)

Conzález, J.