IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MELISSA C. WILLIAMS, individually and ex rel. the Taxpayers of the City of Seattle, | ) ) ) | No. 80961-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF SEATTLE, | ) ) ) | |
| Respondent. | ) ) | |

ANDRUS, A.C.J. — Melissa Williams appeals the summary judgment dismissal of her challenge to the City of Seattle's (City) ordinance regulating dangerous animals. She contends the "dangerous animal" ordinance is unconstitutional because it conflicts with the state "dangerous dog" statute, chapter 16.08 RCW. We conclude that the laws do not unconstitutionally conflict and affirm.

## FACTS

In March 2018, the Seattle Animal Shelter (SAS) received a complaint regarding Williams's dog, Charlie. Kamiya Hayward reported to SAS Officer Caryn Cantu that while walking her dog and attempting to enter her apartment complex,

Charlie ran across the street, off leash, and attempted to bite Hayward's dog. When Hayward picked up her dog to protect it, Charlie bit Hayward.

The City cited Williams for violations of SMC 9.25.084.G(1),[1] for allowing Charlie to bite Hayward, and SMC 9.25.084.A,[2] for permitting Charlie to be at large, unleashed.[3] Williams contested these citations but the municipal court found that she had committed the violations. Although Williams initially appealed the municipal court findings to King County Superior Court, No. 19-2-22518-1, she subsequently abandoned her appeal.

In May 2018, SAS received another complaint about Charlie. Autumn Chandler reported that on May 3, while walking her dog, Charlie ran across the street, barking, and "attacked" and bit her dog. The City again cited Williams for violations of SMC 9.25.084.G(1) for allowing Charlie to bite Chandler's dog and SMC 9.25.084.A for again allowing Charlie to be off leash. Williams did not contest these citations and opted to pay the fine. In the proceedings below, Williams admitted that as a result of these proceedings, Charlie meets the definition of "dangerous animal" under SMC 9.25.020.G.[4]

---

[1] SMC 9.25.084.G(1) makes it unlawful for an owner to permit any animal "when unprovoked on public or private property to: (1) Bite a human being causing less than severe injury as defined in 9.25.023E of the Seattle Municipal Code or bite a domestic animal; . . . " SMC 9.25.023(E) defines "severe injury" as any physical injury that results in broken bones, disfiguring lacerations, avulsions, cuts or puncture wounds requiring medical attention, or permanent nerve damage.

[2] SMC 9.25.084(A) makes it unlawful for an owner to permit any animal to be at large or to trespass on the property of another.

[3] Officer Cantu also issued a citation for violation of SMC 9.25.049 for Williams's failure to vaccinate Charlie against rabies, but the municipal court dismissed this citation.

[4] SMC 9.25.020.G defines "dangerous animal" as including one whose owner is found to have committed two or more violations of SMC 9.25.084.G.

Pursuant to SMC 9.25.035.A, the Division Director of SAS, Ann Graves,[5] began an investigation into whether she should declare Charlie to be dangerous under SMC 9.25.020.G. SMC 9.25.035.B provides that before the director may declare any animal to be dangerous, the director must notify the owner in writing of the reasons why the animal is believed to be dangerous, and provide the owner with the opportunity to meet the director to present information as to why the animal should not be declared dangerous. On November 1, 2018, Director Graves sent Williams a "Notice of Preliminary Determination of Dangerous Animal Right to Meeting" letter (NPDD), notifying her that the City had preliminarily determined that Charlie was a dangerous animal. Graves explained:

> I am investigating to determine whether your dog is a dangerous animal under Section SMC 9.25.020(G). SAS has received multiple complaints of Charlie permitted to run at large and attack other dogs. Based off the two separate incidents resulting in citations for Charlie biting a human being on one incident and a domestic animal on another incident, I have made a preliminary determination that your dog is a dangerous animal. I will make my final determination after the expiration of twenty (20) days following the services of this notice upon you. After that time, I will issue my final determination as to whether your dog, Charlie, is a dangerous animal or not.

Graves offered to meet with Williams to allow her to provide information as to why Charlie should not be declared dangerous.

On January 3, 2019, Williams and her attorney met with Graves, Don Baxter from SAS, and counsel from the Seattle City Attorney's Office. At this meeting, Williams "provided extensive information" for Graves to consider. Afterwards, SAS decided to offer Williams a settlement instead of proceeding directly to declaring

---

[5] Director Graves was acting as an authorized representative of the Director of the Department of Finance and Administrative Services.

Charlie to be dangerous.  Negotiations lasted until June 2019, when Williams filed a CRLJ 60 motion in municipal court to vacate the findings on the underlying citations.  The municipal court denied this motion.

In September 2019, Williams filed this lawsuit, seeking a declaration under the Uniform Declaratory Judgment Act (UDJA) that the City's "dangerous dog" ordinance was unconstitutional under article XI, section 11 of the Washington State Constitution because definitions within the ordinance conflict with RCW 16.08.070(2) and (3).

The City has taken no further action relating to Williams's dog while this litigation has been pending.  The City has not issued a final declaration that Charlie is dangerous, nor has it ordered Charlie to be removed from the city or destroyed.

Both Williams and the City filed motions for summary judgment.  The trial court granted the City's motion and dismissed Williams's complaint.  The trial court concluded the Supreme Court's holding in Rabon v. City of Seattle, 135 Wn.2d 278, 957 P.2d 621 (1998), was dispositive, there is no evidence of a legislative intent to preempt the field of dangerous animal regulation, and there is no constitutional conflict between Seattle's "dangerous animal" ordinance and the state "dangerous dog" statute.  Williams appeals.

ANALYSIS

A.  Justiciability

The City argues the trial court appropriately dismissed Williams's lawsuit because she failed to establish the existence of a justiciable controversy.  Specifically, the City contends Williams's claim is not ripe and she lacks standing

to raise her constitutional challenge because the City has not determined the dog is in fact dangerous or ordered Williams to remove the dog from the city limits or otherwise dispose of it. Because Williams admitted below that Charlie meets the ordinance's definition of "dangerous animal," which means the City could declare the dog dangerous at any time, and Williams challenges its authority to do so, we conclude Williams's claim is ripe and she has direct standing to bring this pre-enforcement challenge to the City ordinance, despite the lack of a final dangerousness declaration or removal order.

Williams seeks relief under the UDJA, which provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, municipal ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

The UDJA requires a justiciable controversy, meaning (1) one presenting an actual, present, and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) involving interests that are direct and substantial, rather than potential, theoretical, abstract, or academic, and (4) of which a judicial determination will be final and conclusive. Diversified Indust. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). All four justiciability factors must be present "to ensure that the court will be rendering a final judgment on an actual dispute between opposing parties

with a genuine stake in the resolution." To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). The doctrines of ripeness and standing are encompassed in the first and third prongs, respectively. Alim v. City of Seattle, 14 Wn. App. 2d 838, 847, 474 P.3d 589 (2020). Ripeness and standing are questions of law we review de novo. Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 209, 293 P.3d 413 (2013); In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

In determining whether a claim is ripe for review, this court considers if the issues raised are primarily legal and do not require further factual development, and if the challenged municipal action is final. Jafar v. Webb, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013). We also consider the hardship to the parties of withholding court consideration. Id. Here, the parties have an actual, present, and existing dispute—whether the City can declare Charlie to be a dangerous animal. The issue before the court—whether certain provisions of the City's Animal Control Code unconstitutionally conflict with state law—is entirely a legal question that requires no further factual development of the record.

The City argues Williams's claim is not ripe because it has not made a final decision to declare the dog dangerous and whether it will do so in the future is purely hypothetical. But the City has already preliminarily determined that the dog is dangerous based on the two undisputed violations of SMC 9.25.084.G(1). Williams conceded below her dog fits the definition of "dangerous animal" under the city code. And the Director has conducted the mandatory pre-declaration meeting with Williams as required by SMC 9.25.035.B. Thus, while the Director

may have the discretion to withhold a final decision indefinitely, there is no legal impediment to the City declaring the dog dangerous at any time. These are, at a minimum, the "mature seeds" of an actual dispute between the parties.

Moreover, Williams contends the City lacks any authority under article XI, section 11 of the Washington State Constitution to promulgate an ordinance that deems a dog "dangerous" in the absence of severe injury as is required under RCW 16.08.070(2). If her contention were correct, even the issuance of the NPDD under SMC 9.25.035.B would be unlawful. The "final" act is not the City's decision to declare Williams's dog dangerous but the enactment of an ordinance that appears broader in scope than state statute. The claim before us is ripe.

The City next argues Williams does not have direct standing because she has not suffered any actual or imminent injury from the ordinance provisions she challenges. In a pre-enforcement challenge to a municipal ordinance, a party must demonstrate that (1) the interest they seek to protect is within the zone of interests regulated by the ordinance; and (2) they have suffered or will suffer an injury in fact. Alim, 14 Wn. App. 2d at 852.

Williams's interest in keeping her dog despite his behavior is clearly within the zone of interests regulated by the ordinance. The City does not contest this. And Williams will suffer an injury in fact if the City decides to declare her dog dangerous, which it could do at any point. If the City takes this step, Williams will be obligated by law to comply with an order to remove the dog from the City or face the destruction of her pet. This outcome presents a sufficient risk of injury to

confer direct standing.[6]  We therefore turn to the merits of her challenge to the constitutionality of the City's dangerous animal ordinance.

B. Constitutionality

Williams argues that portions of the City's dangerous animal ordinance are unconstitutional because they directly and irreconcilably conflict with state statute. We reject this argument because the legislature has granted exclusive jurisdiction to local governments to regulate "potentially dangerous dogs" and the City's ordinance is consistent with the exercise of that authority.

The Washington constitution grants every local government the power to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11. An ordinance is valid "unless: (1) the Ordinance conflicts with some general law; (2) the Ordinance is not a reasonable exercise of the [local government's] police power; or (3) the subject matter of the Ordinance is not local." Cannabis Action Coal. v. City of Kent, 183 Wn.2d 219,  225-26, 351 P.3d 151 (2015) (quoting Weden v. San Juan County, 135 Wn.2d 678, 692-93, 958 P.2d 273 (1998)).  A heavy burden rests upon the party challenging the ordinance's constitutionality and there is a strong presumption in favor of constitutionality.  Cannabis Action Coal., 183 Wn.2d at 226.  The validity of an ordinance under article XI, section 11 is a question of law subject to de novo review.  Id.

Williams contends SMC 9.25.020.G, the definition of "dangerous animal;" SMC 9.25.023.E, the definition of "severe injury;" and SMC 9.25.024.A, the

---

[6] Because we conclude Williams has direct standing to bring this UDJA challenge, we need not reach her argument that she also has taxpayer standing.

definition of "unprovoked" conflict with state law because they sweep more animals into their purview than permitted under state law. Williams asks this court to conclude that state statutory definitions of "dangerous dogs" preempt any conflicting local ordinances.

Conflict preemption occurs when an ordinance permits what the state laws forbid or forbids what the state laws permit. Lawson v. City of Pasco, 168 Wn.2d 675, 682, 230 P.3d 1038 (2010). But where the statute and ordinance may be read in harmony, this court will not find conflict. Id. In this case, the City's dangerous animal ordinance does not conflict with state law because RCW 16.08.090(2) grants exclusive jurisdiction to local governments to regulate dogs such as Charlie.

State statute identifies two categories of dogs—"potentially dangerous dogs" subject to exclusive local regulation, and "dangerous dogs" subject to concurrent state and local regulation. A "potentially dangerous dog" is defined as:

> any dog that when unprovoked: (a) Inflicts bites on a human or a domestic animal either on public or private property, or (b) chases or approaches a person upon the streets, sidewalks, or any public grounds in a menacing fashion or apparent attitude of attack, or any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to cause injury or otherwise to threaten the safety of humans or domestic animals.

RCW 16.08.070(1). Under RCW 16.08.090(2), "[p]otentially dangerous dogs shall be regulated only by local, municipal, and county ordinances. Nothing in this section limits restrictions local jurisdictions may place on owners of potentially dangerous dogs."

A "dangerous dog" under RCW 16.08.070(2) is:

any dog that (a) inflicts severe injury on a human being without provocation on public or private property, (b) kills a domestic animal without provocation while the dog is off the owner's property, or (c) has been previously found to be potentially dangerous because of injury inflicted on a human, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans.

It is unlawful for an owner to have a dangerous dog in the state without a certificate of registration, RCW 16.08.080(5), or to permit the dog to be outside the proper enclosure unless the dog is muzzled and under physical restraint of a responsible person. RCW 16.08.090(1).

In Rabon, an owner whose dogs had been ordered destroyed challenged Seattle's "vicious dog" ordinance,[7] arguing it irreconcilably conflicted with state statute and was unconstitutional under article XI, section 11. Id. He argued the state statute permitted the registration of dangerous dogs, whereas the City required vicious dogs to be destroyed. Id. at 284. He also argued that the City's ordinance treated all dog bites alike regardless of their severity, whereas under state law, only dogs whose bites caused "severe injury" could be declared "dangerous." Id. at 293.

The Supreme Court rejected both arguments. It held that under RCW 16.08.090(2), local governments have sole jurisdiction over "potentially dangerous dogs" and local and state governments have concurrent jurisdiction over "dangerous dogs." Id. at 290-291. As for the claimed conflicts between the two regulatory schemes, the Supreme Court held that the City could constitutionally

---

[7] Under former SMC 9.25.083 (1985), "vicious animal" was defined to include any animal "which bites, claws, or otherwise harms a human being or another animal, or which demonstrates menacing behavior toward human beings or domestic animals, but does not include an animal that bites, attacks, or menaces a person or another animal that has tormented or hurt it."

impose greater restrictions than state law because both were prohibitory in nature. Id. at 293. And while a local ordinance could not permit what state law explicitly prohibited, nothing prevented the City from "provid[ing] further protection from dangerous or vicious animals." Id. The definitional differences between state statute and city code did not render the ordinance invalid under article XI, section 11 because the ordinance did not permit an owner to keep a "dangerous" dog without complying with state law. Id.

Rabon governs here. The City's "dangerous animal" ordinance does not permit what state law forbids and does not prohibit what state law permits. Under SMC 9.25.083.A, it is "unlawful to own a dangerous animal . . . with knowledge that the animal is dangerous, or with reckless disregard of the fact that the animal is dangerous." The City includes in its definition of a "dangerous animal," any dog whose owner has committed two or more violations of SMC 9.25.084.G. SMC 9.25.020.G(2). SMC 9.25.084.G(1) makes it unlawful for a dog owner to permit their animal to bite a human or a domestic animal. If an owner permits a dog to bite a human or domestic animal, the City may order the dog removed from the city limits or order the dog destroyed.

These restrictions are not inconsistent with state law. State law does not permit owners to let their dogs bite humans or domestic animals. Indeed, a dog that bites a human or another dog meets the state definition of a "potentially dangerous dog," the area left exclusively to local regulation. RCW 16.08.070 does not prevent the City from determining that a "potentially dangerous dog" under state law is a "dangerous animal" under city ordinance. As Rabon recognized,

both the state statute and the ordinance are prohibitive in nature and the local ordinance can be more restrictive and provide more protection than state law.

Williams contends <u>Rabon</u> is distinguishable because that case addressed the City's ability to regulate dogs that fall within the state law's definition of "dangerous." According to Williams, "[t]he City is obviously free to impose more prohibitive restrictions on dogs statutorily defined as dangerous" but the City may not "expand the definitions" created by state law, thus altering who falls within the regulatory ambit. But this argument ignores the fact that the legislature explicitly authorized local jurisdictions to regulate "potentially dangerous dogs" in any manner they deemed appropriate. While a city obviously cannot modify state law, the legislature is free to allow a city to impose the same restrictions on owners of "potentially dangerous dogs" as the state imposes on owners of "dangerous dogs."

We conclude the state "dangerous dog" law and the City's "dangerous animal" ordinance do not conflict and the former does not preempt the latter.

We affirm.

_Andrus, A.C.J._

WE CONCUR:

_____        _____