# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ALL NATURAL HERBS, LLC, | No.  54083-5-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE LIQUOR AND CANNABIS BOARD, | UNPUBLISHED  OPINION |
| Respondent. | |

WORSWICK, J. — All Natural Herbs, LLC, (ANH) appeals a superior court order denying ANH's petition for review under the Administrative Procedures Act (APA).[1]  ANH applied for a recreational cannabis license but was assigned a low-priority designation by the State Liquor and Cannabis Board's Licensing and Regulation Division (the agency) and has yet to receive a license.  ANH first petitioned for review of the agency's determination in 2016, and disputes a final order of the Liquor and Cannabis Board (the Board).  ANH's overarching argument is that the agency missed its 90-day statutory deadline to notify ANH that it had commenced adjudicative proceedings after ANH requested review under RCW 34.05.413 and RCW 34.05.419.[2]

---

[1] Chapter 34.05 RCW.

[2] RCW 34.05.413 establishes when an agency shall commence an adjudicative proceeding and what constitutes commencing that proceeding.  RCW 34.05.419 mandates timelines for the agency on application for adjudication.

ANH's 22 assignments of error fall into five categories: (1) the agency failed to commence an adjudicative proceeding within 90 days, and thus, by operation of default, ANH is entitled to a recreational cannabis license; (2) the Board violated ANH's due process rights; (3) RCW 34.05.419 and the agency's licensing rule were unconstitutional as applied; (4) the Board's March 2017 final order was an unconstitutional prior restraint under the First Amendment; and (5) the agency unconstitutionally discriminated on the basis of race. We hold that the agency timely commenced an adjudicative proceeding and that ANH fails to show that the Board or agency violated ANH's constitutional rights. Accordingly, we affirm.

FACTS

I. MARIJUANA LICENSING SCHEME IN 2015

In 2015, Washington merged its existing medical marijuana market with the new retail marijuana industry. Laws of 2015, ch. 70 (codified in part of chapter 69.50 RCW). Due to the limited number of licenses available, the Legislature implemented former RCW 69.50.331(1)(a) in 2015, which required the Board to assign Priority 1, 2, or 3 status to applicants for the new licenses. Former RCW 69.50.331(1)(a) (2015); *see also* former WAC 314-55-081 (2015); WSR 15-19-165. The Board then created rules implementing the priority determination system to specify the criteria for applicants. Former WAC 314-55-020 (2015). Applicants were to be processed for licensure in order of priority and by date of application submission. Former WAC 314-55-020(3) (2015). Priority 1 applicants were more likely to receive a license because the agency processed these applications first. *See Top Cat Enters., LLC v. City of Arlington*, 11 Wn. App. 2d 754, 756, 455 P.3d 225 (2020).

The Board accepted license applications under this scheme between October 12, 2015 and March 31, 2016, and received more than 2500 applications for 222 available licenses. The agency collected applicants' documentation and assigned a priority determination. It was under this scheme that ANH sought a retail marijuana license. To achieve a Priority 1 designation, an applicant was required to, among other things, operate or be employed by a collective garden before January 1, 2013. Former RCW 69.50.331(a)(i).

## II. ALL NATURAL HERBS' APPLICATION

Il Yi, the owner of ANH, had experience in the cannabis industry going back to 2011 that was relevant to being able to apply for a license under the 2015 scheme.[3] Yi was employed by a cannabis organization doing business as The Healing Center of Tacoma. Yi received a W-2 tax form for 2011 showing him as an employee of The Healing Center of Tacoma.

The Healing Center of Tacoma was a collective cannabis garden. Under the medical marijuana scheme, collective gardens existed "for the purpose of producing, processing, transporting, and delivering cannabis for medical use." Former RCW 69.51A.085(1) (2011). However, the statute governing collective gardens imposed certain conditions, including: "No useable cannabis from the collective garden is delivered to anyone other than one of the qualifying patients participating in the collective garden." Former RCW 69.51A.085(1)(e) (2011).

Although Yi was employed by The Healing Center of Tacoma, the business repeatedly reported to the Secretary of State that it was not doing business between 2011 and 2013. Despite the Department of Revenue reporting that The Healing Center was up to date on its excise taxes,

---

[3] Yi is Korean-American.

the record also shows that The Healing Center filed no wage information with the State Employment Security Department and paid no taxes before April 2016. The owner of The Healing Center also admitted that he had not paid the company's taxes. Moreover, the Department of Labor and Industries had no account for covered employees on file for The Healing Center of Tacoma.

In 2012, Yi started his own medical cannabis business, Natural 7, LLC. Yi later formed a second LLC, ANH.

On March 27, 2016, four days before the end of the application period, ANH filed an application for a retail marijuana license, which Yi completed by filing a Priority Verification Form and providing other documentation on April 7. Despite personally operating as Natural 7 previously, Yi listed The Healing Center of Tacoma as the predecessor entity on ANH's license application. On April 21, the agency notified ANH it had been assigned Priority 3 status.

On April 27, ANH sent a letter requesting the agency change its status to Priority 1, or in alternative, provide an explanation for its Priority determination. The letter contained a typo conflating Priority 1 and Priority 3 that confused agency staff. As a result, the agency records staff asked for clarification.

On May 4, ANH responded by email and requested documents explaining the Priority determination. A timeline and synopsis of the emails exchanged between ANH and the agency follows:

12:43 pm – ANH sent an email to clear up the confusion about its letter. The email stated that ANH was seeking information explaining why it was not assigned Priority 1.

The email stated, "This information will be used for an appeal." Clerk's Papers (CP) at 406-07.

4:05 pm – A Deputy Director of Licensing and Regulation from the agency responded, "We will consider it a public records request and a request for appeal, but we need the license number." CP at 406.

6:46 pm – ANH replied: "The letter was not necessarily intended to be an appeal, as it was hoped the [Board] would explain its reasoning or change our priority status to Priority 1." Later in the same email, ANH stated, "However, that all said, since it appears the [Board] is not changing our status from Priority 3 to Priority 1, nor providing any written explanation as to why . . . then this email/letter does constitute a notice of appeal." CP at 405.

On May 24, 2016, the agency sent ANH a "Statement of Intent for Priority Determination" that explained the agency's reasoning for assigning Priority 3. The Statement assigned ANH a case number, M-26,119. In this same mailing, the agency also included a standard "Request for Hearing" form that informed ANH of its procedural rights and had a box that the recipient could check to request a hearing. On June 15, the agency received this form from ANH with the box requesting a hearing checked.

On June 17, the agency responded in a letter stating: "This letter is being sent to you to acknowledge the receipt of a request for a hearing. The matter is being forwarded to the Office of the Attorney General." CP at 388. Following this letter, the parties exchanged emails on July 12, and discussed whether a hearing had been scheduled. When ANH asked the agency if a hearing date had been scheduled, the agency responded:

> No . . . there is no hearing scheduled in this case. Cases are typically evaluated and scheduled as soon as possible within the competing priorities, and I know of no reason for inordinate delay in this case. As soon as OAH [Office of Administrative Hearings] assigns a date, I'm sure you'll be contacted.

CP at 420. On August 31, the Attorney General's office (AGO) forwarded case number M-26,119 to the OAH for assignment to an administrative law judge (ALJ).

On September 9, the OAH sent ANH a Notice of Prehearing Conference, which notified ANH that an ALJ would conduct a prehearing conference on October 25. On October 24, ANH moved for summary judgment arguing that the agency had failed to commence adjudicative proceedings within 90 days of ANH's request and therefore lacked jurisdiction over its application. At the October 25 prehearing conference, the parties agreed that the sole issue before the ALJ would be whether the Board or OAH had jurisdiction over the proceedings, given ANH's timeliness claim.

On December 22, the ALJ held a hearing on the summary judgment issue. On January 4, 2017, the ALJ granted ANH's motion for summary judgment, reversed the agency's Statement of Intent for Priority Determination, and remanded the issue to the agency for further review. The ALJ ruled that the agency "lack[ed] subject matter jurisdiction" because it "failed to timely request commencement of an adjudicatory proceeding" under RCWs 34.05.413 and 34.05.419. CP at 41. The ALJ further ruled that neither the May 24, June 17, nor July 12, 2016, communications constituted the commencement of an adjudicative proceeding as required by statute. On January 24, the agency sought Board review.

On March 21, 2017, the Board issued its final order. The Board found that the June 17, 2016 letter marked the commencement of the adjudicative hearing because it began preparation

for a hearing.  As for the communication between ANH and the agency before June 17, the

Board explained:

> The prior communications about the priority determination were informal. Licensing properly did not consider those communications as a request for hearing by the licensee that begins the hearing process.  Those communications did provide notice to Licensing that the applicant *wanted* an appeal, resulting in the preparation of the Statement of Intent for Priority Determination.  The Statement of Intent was mailed on May 24, 2016 along with the Request for Hearing form and the cover letter that advised the applicant of the timelines for requesting a hearing.

CP at 468 (Conclusion of Law 4.4) (emphasis in original).

The Board explained that the agency's June 17 letter therefore commenced adjudicative

proceedings under the APA.  "Applicant requested an adjudicative proceeding when it filed the

Request for Hearing with the Board on June 15, 2016.  Licensing's June 17, 2016 letter notified

the applicant that the Request for Hearing had been received and commenced the hearing

process."  CP at 468.  The Board reasoned that the letter commenced the adjudicative proceeding

under RCW 34.05.413(5) because it notified ANH of an "other stage of an adjudicative

proceeding" as specified in the statute.  RCW 34.05.413(5);[4] CP at 468-69.

The Board also determined that the agency did not lack subject matter jurisdiction and

reversed the ALJ's summary judgment ruling.  The Board ruled that ANH could not have

requested an appeal until it received the agency's May 24 Statement of Intent for Priority

---

[4] RCW 34.05.413(5) provides: "An adjudicative proceeding commences when the agency or a presiding officer notifies a party that a prehearing conference, hearing, or other stage of an adjudicative proceeding will be conducted."

Determination. The Board reasoned that the agency's May 24 Statement of Intent letter served as a "charging document" that provided ANH the "ability to request a hearing."[5] CP at 468, 470.

Because the ALJ had decided the case on procedural grounds (summary judgment), the Board remanded to the Licensing Division "for consideration of the documents provided by the Applicant, as potentially supplemented during the hearing process, for a new priority determination and notice of hearing rights, if appropriate." CP at 472-73. The Board also gave ANH the "opportunity to again request a hearing if so desired." CP at 473.

On April 27, 2017, after remand, the agency sent ANH a new Priority Determination and blank Request for Hearing form. The agency also assigned ANH a new case number (M-26,505) and again determined that ANH was Priority 3. ANH again requested a hearing.

An ALJ held hearings in October 2017 and February 2018. At the October hearing, the owner of a separate collective garden site, The Healing Center of Olympia, testified that he had purchased and received several pounds of cannabis each month from The Healing Center of Tacoma. At the February hearing, the owner of the Healing Center of Tacoma confirmed that it had delivered cannabis to other collective gardens.

Yi also testified at the February hearing. He explained that four other entities near ANH's location were licensed immediately after ANH's initial Priority 3 determination. Yi testified that he knew the owners of these shops and that they were all Caucasian. When Yi was being cross-examined by the agency, the following exchange occurred:

---

[5] The Board based this conclusion on *Hutmacher v. Bd. of Nursing*, 81 Wn. App. 768, 915 P.2d 1178 (1996).

Q: So you remember Ms. McShane's testimony?[6] It was a long time ago. And she testified that race played no role in the [agency's] decision, so what evidence do you have that race did play a role?

A: I'm not claiming that race played a role.

Administrative Record (AR) at 657.

In a May 31, 2018 initial order, the ALJ affirmed the Priority 3 determination for case M-26,505.[7] The ALJ analyzed whether the agency had correctly determined ANH's priority designation under the controlling laws, former RCW 69.51A.330 and former WAC 314-55-020. To achieve a Priority 1 designation under those laws, an applicant was required to, among other things, operate or be employed by a collective garden before January 1, 2013. Former RCW 69.50.331(a)(i). The ALJ concluded that the agency correctly determined that Yi's former employer, the Healing Center of Tacoma, did not qualify as a collective garden as defined in former RCW 69.51A.085. Thus, the ALJ concluded that the agency properly determined ANH's priority.

ANH petitioned for review by the Board, and the Board issued a final order on July 24, 2018. The Board affirmed the ALJ's initial order, adopted the ALJ's findings of fact and conclusions of law, and upheld ANH's Priority 3 designation.

On August 23, 2018, ANH filed a petition for Judicial Review and Declaratory Judgment in superior court. The superior court denied ANH's petition for review on November 1, 2019.

ANH appeals all of the orders issued in this case.

---

[6] Jeanne McShane was the Deputy Director of Licensing at the agency at the time of ANH's application.

[7] The ALJ also determined it did not have jurisdiction over ANH's challenge of the 90-day rule or ANH's due process claims.

ANALYSIS

ANH has appealed five orders: (1) the ALJ's January 4, 2017 initial order granting ANH summary judgment and remanding the matter to the agency, (2) the Board's March 21, 2017 final order reversing the ALJ's initial order granting summary judgment and remanding to the agency, (3) the ALJ's March 31, 2019 initial order affirming the agency's Priority 3 determination, (4) the Board's July 24, 2018 final order affirming the ALJ's initial order and the Priority 3 designation, and (5) the superior court's November 1, 2019 order denying ANH's petition for review.

ANH argues that the agency missed its 90-day statutory deadline to notify ANH that it had commenced an administrative proceeding to review its Priority 3 determination. ANH assigns error to all but one of the Board's conclusions of law from its March 21, 2017 final order remanding the matter to the agency. ANH also assigns error to all findings of fact and conclusions of law from the Board's May 31, 2018 initial order and July 24, 2018 final order, arguing that those orders are void. ANH also argues that its rights were violated under the due process and equal protection clauses of the Fourteenth Amendment and that the Board's March 21, 2017 final order was an unconstitutional prior restraint under the First Amendment. As a remedy, ANH requests that we void all of the Board's orders, issue ANH a Priority 1 determination, and issue it a retail cannabis license at a qualified location of its choosing.

We hold that the agency began the adjudicative proceeding within 90 days and that the agency did not violate ANH's constitutional rights. We also hold that the agency did not unconstitutionally discriminate on the basis of race. Accordingly, we affirm.

10

I. TIMELINESS OF LICENSING DIVISION'S COMMENCEMENT OF ADJUDICATIVE PROCEEDINGS

ANH argues that the agency missed its 90-day statutory deadline to notify ANH that it had commenced an administrative proceeding. ANH argues that the agency was therefore in default and prohibited from opposing ANH's appeal to the Board. The agency argues that it timely commenced an adjudicative proceeding because it assigned ANH a case number on June 17, 2016, and notified ANH that it had received its request for an adjudicative proceeding. We agree that the agency timely commenced an adjudicative proceeding, but hold that the agency's July 12 communications notified ANH that the agency had commenced the proceeding.

A.    *Legal Principles*

Here, we review the agency's actions under the APA to determine if it complied with the statute. We review issues of statutory interpretation de novo. *Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 518, 387 P.3d 690 (2017). When interpreting a statute, we determine legislative intent from the plain language and ordinary meaning of the statute. *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). Our inquiry ends where a statute is plain and unambiguous. *HomeStreet, Inc. v. Wash. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009).

When reviewing an agency's decision under the APA, we review the record before the Board, and sit in the same position as the superior court. *Am. Waterways Operators v. Dep't of Ecology*, 7 Wn. App. 2d 808, 815-16, 435 P.3d 856 (2019). We "review only the board's decision, not the ALJ's decision or the superior court's ruling." *Marcum v. Dep't of Soc. & Health Servs.*, 172 Wn. App. 546, 559, 290 P.3d 1045 (2012). We review the Board's legal conclusions de novo under the "error of law" standard. *Marcum*, 172 Wn. App. at 559; RCW

34.05.570(3)(d). We examine the record on appeal and will uphold an agency's factual findings if they are supported by substantial evidence. *Marcum*, 172 Wn. App. at 560. We will uphold the Board's contested factual findings if supported by substantial evidence. *Marcum*, 172 Wn. App. at 560.

The APA applies to the Liquor and Cannabis Board and establishes our review of agency action. RCW 34.05.030(5); RCW 34.05.010(2); RCW 34.05.510. "Agency action" includes "licensing, [and] the implementation or enforcement of a statute." RCW 34.05.010(3).

The APA provides:

> "Adjudicative proceeding" means a proceeding before an agency in which an opportunity for hearing before that agency is required by statute or constitutional right before or after the entry of an order by the agency. Adjudicative proceedings also include all cases of licensing . . . in which an application for a license . . . is denied except as limited by RCW 66.08.150.

RCW 34.05.010(1). An applicant for a license before the Liquor and Cannabis Board may demand a hearing. RCW 66.08.150(3).

The APA lists when a court may grant relief when reviewing adjudicative proceedings, explaining that a court

> shall grant relief from an agency order in an adjudicative proceeding only if it determines that: (a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied; (b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law; (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure; (d) The agency has erroneously interpreted or applied the law; (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter; . . . [or] (i) The order is arbitrary or capricious.

RCW 34.05.570(3). "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).

The APA mandates agency action on receipt of an application for an adjudicative proceeding. It provides:

> (1) Except in situations governed by subsection (2) . . . of this section, within ninety days after receipt of the application or of the response to a timely request made by the agency under subsection (2) of this section, the agency shall do one of the following:
> (a) Approve or deny the application, in whole or in part, on the basis of brief or emergency adjudicative proceedings, if those proceedings are available under this chapter for disposition of the matter;
> (b) Commence an adjudicative proceeding in accordance with this chapter; or
> (c) Dispose of the application in accordance with RCW 34.05.416;
>
> (2) Within thirty days after receipt of the application, the agency shall examine the application, notify the applicant of any obvious errors or omissions, request any additional information the agency wishes to obtain and is permitted by law to require, and notify the applicant of the name, mailing address, and telephone number of an office that may be contacted regarding the application . . . .

RCW 34.05.419(1), (2).

The APA also mandates when an agency is required to hold an adjudicative proceeding:

> (2) When required by law or constitutional right, and upon the timely application of any person, an agency shall commence an adjudicative proceeding.
>
> (3) An agency may provide forms for and, by rule, may provide procedures for filing an application for an adjudicative proceeding. An agency may require by rule that an application be in writing and that it be filed at a specific address, in a specified manner, and within specified time limits. . . .
>
> . . .
>
> (5) An adjudicative proceeding commences when the agency or a presiding officer notifies a party that a prehearing conference, hearing, or other stage of an adjudicative proceeding will be conducted.

RCW 34.05.413.

B.       *Agency's Timeliness under RCW 34.05.413 and 34.05.419*

ANH argues that the Board's March 21, 2017 final order erroneously interpreted and applied RCWs 34.05.413 and 34.05.419. ANH argues that its May 4, 2016, email was a request for an adjudicative proceeding which began the 90-day window for the agency to act under RCW 34.05.419(1). ANH then argues that the agency did not commence an adjudicative proceeding under RCW 34.05.413(5) until the agency's September 9 prehearing conference scheduling, falling outside the 90-day window and thus being untimely.

The agency argues that it was not until June 15, the date the completed agency-provided Request for Hearing form was received by the agency, that ANH requested an adjudicative proceeding. The agency then argues that it commenced an adjudicative proceeding under RCW 34.05.413(5) on June 17, when it assigned a Liquor and Cannabis Board case number (M-26,119) and sent ANH a letter informing it that the agency had received ANH's Request for Hearing form. Although we agree with ANH that it requested an adjudicative proceeding on May 4, we disagree with both parties regarding the date the agency commenced the adjudicative proceeding.

1. *ANH's Request for an Adjudicative Proceeding was Effective May 4, 2016.*

AHN argues that it requested an adjudicative proceeding on May 4. ANH argues that the Board erred when it found that ANH requested the adjudicative proceeding on June 15. We agree.

The APA provides timelines for the adjudicative process. "When required by law or constitutional right, and upon the timely application of any person, an agency shall commence an adjudicative proceeding." RCW 34.05.413(2). After a timely application, the agency shall

14

"commence an adjudicative proceeding" within 90 days of receipt of the application. RCW 34.05.419(1)(b). "The agency shall allow at least twenty days to apply for an adjudicative proceeding from the time notice is given of the opportunity to file such an application." RCW 34.05.413(3).

ANH received notification from the agency that it had been assigned Priority 3 on April 21, 2016. On April 27, ANH sent the agency a letter requesting an explanation for the agency's decision. On May 4, ANH and the agency exchanged emails regarding whether or not ANH's April 27 letter constituted an appeal or a public records request. There was a scrivener's error in ANH's April 27 letter, which ANH corrected in an email on May 4.

In the May 4 email, ANH explained to the agency that it was asking for supporting documentation on the agency's decision not to grant ANH Priority 1. It stated, "This information will be used for an appeal." A Deputy Director of Licensing and Regulation from the agency responded, "We will consider it a public records request and a request for an appeal, but we need the license number."

In response, ANH explained, "The [April 27] letter was not necessarily intended to be an appeal, as it was hoped the LCB would explain its reasoning or change our priority status to Priority 1." But ANH then stated, "[S]ince it appears the LCB is not changing our status from Priority 3 to Priority 1, nor providing any written explanation as to why . . . then this email/letter does constitute a notice of appeal."

ANH's May 4 email was within 20 days of the agency's April 21 notice that ANH was assigned Priority 3, and was therefore within the 20-day minimum the agency must grant a party to apply for an adjudicative proceeding under RCW 34.05.413(3). Thus, the unambiguous

15

language of ANH's May 4 email stating that the "email/letter does constitute a notice of appeal" was a timely application for an adjudicative proceeding under the clear language of RCW 34.05.413(2). Accordingly, May 4 started the 90-day window for the agency to act under RCW 34.05.419(1).

The agency argues that ANH did not request an adjudicative proceeding until June 15, 2016, when it returned the Request for Hearing form. We disagree.

The APA provides:

An agency may provide forms for and, by rule, may provide procedures for filing an application for an adjudicative proceeding. An agency may require by rule that an application be in writing and that it be filed at a specific address, in a specified manner, and within specified time limits.

RCW 34.05.413(3).

The agency argues that under RCW 34.05.413(3) it has the authority to "provide forms" to be used in filing an "application for an adjudicative proceeding," and that ANH therefore did not request an adjudicative proceeding until it returned the Request for Hearing form. But the agency ignores the rest of RCW 34.05.413(3).

We review issues of statutory interpretation de novo. *Fortgang*, 187 Wn.2d at 518. We determine legislative intent from the plain language and ordinary meaning of the statute. *City of Spokane*, 158 Wn.2d at 673.

Although the agency "may provide forms for" filing an adjudicative proceeding, it also "*by rule*, may provide procedures for filing an application" and "may require *by rule* that an application be in writing and that it be filed . . . in a specified manner." RCW 34.05.413(3) (emphasis added). Because "by rule" precedes the permission the statute grants to the agency,

the plain language and ordinary meaning of the statute requires the agency to use rulemaking if it wishes to *mandate* that applicants use a particular procedure to file an application.

The agency has promulgated no rules providing for application procedures or specifying that appeals must be in writing or filed in a specified manner. Thus, although the agency provided a form to ANH on May 24, ANH was not required to use that form to initiate its request for an adjudicative proceeding.

The agency attempts to circumvent the APA's rulemaking requirement by leaning on the statutory language that it "may provide" a form for requesting an adjudicative proceeding. It echoes the Board's conclusion of law 4.4 from March 21, 2017, and calls the May 4 correspondence with ANH "informal." The agency argues that using the form could eliminate uncertainty about the date a hearing request was initiated. And indeed it may. But if the agency seeks to provide uniform "procedures for filing an application for an adjudicative proceeding," the statute clearly requires it engage in rulemaking to do so. To hold otherwise would allow agencies to avoid rulemaking to mandate the procedures as required by RCW 34.05.413(3) by simply drafting a form.

Although the agency may provide a form as an aid to applicants, it cannot require its use as the "specified manner" to apply without promulgating a rule. Accordingly, ANH's May 4 email, and not the June 15 Request for Hearing form constituted ANH's request for an adjudicative proceeding.

2. *The Agency Timely Commenced Adjudicative Proceeding on July 12, 2016.*

ANH argues that the Board erroneously ruled that the agency's May 24 Statement of Intent letter served as a "charging document," such that ANH could not request a hearing before

its issuance, and that ANH did not request a hearing until it submitted the agency-provided form; that the Board erred when it ruled that the agency commenced the adjudicative proceeding with its June 17, 2016, letter; and that the September 9, 2016, Notice of Prehearing Conference commenced adjudicative proceedings. The agency argues that the Board properly ruled that it commenced adjudicative proceedings on June 17.

We agree with ANH that the Board erred when it ruled that the June 17 letter commenced adjudicative proceedings and that it erred in ruling the May 24 Statement of Intent provided ANH the ability to request a hearing. However, we disagree with both ANH and the agency regarding the date adjudicative proceedings commenced and hold that the agency commenced adjudicative proceedings on July 12.

a. *May 24, 2016 Statement of Intent*

ANH argues that the Board erred when it ruled the agency's May 24 Statement of Intent, which included the blank Request for Hearing form, served as a "charging document" and that ANH's request for adjudication could follow only therefrom. We agree.

As explained above, under RCW 34.05.413(3), although an agency "may provide forms" for an applicant to request an adjudication, an agency may mandate that applicant use such a form only if the agency has promulgated a rule requiring such procedure. Thus, the Board erred when it determined that ANH did not request an adjudicative hearing until it returned the agency-provided Request for Hearing form on June 17.

i. *Statement of Charges under* Hutmacher v. State Board of Nursing

The agency argues that the Board correctly relied on *Hutmacher v. State Board of Nursing*, 81 Wn. App. 768, 915 P.2d 1178 (1996), when it determined the May 24 Statement of intent served as a "charging document." We disagree.

In *Hutmacher*, the Board of Nursing moved to remove a nurse's license after she illegally obtained drugs. 81 Wn. App. at 770. The Board issued a "Statement of Charges" against the nurse. *Hutmacher*, 81 Wn. App. at 770. Hutmacher filed a response within 20 days, but did not contest the charges. *Hutmacher*, 81 Wn. App. at 770. The Board did not commence a hearing until more than a year after it issued the Statement of Charges. *Hutmacher*, 81 Wn. App. at 770. Hutmacher appealed, arguing that the Board lost jurisdiction over her case by failing to take action within 90 days of her answer to the Statement of Charges. *Hutmacher*, 81 Wn. App. at 771. Division I of this court held that the Board's Statement of Charges commenced the adjudicative proceeding. *Hutmacher*, 81 Wn. App. at 772.

This case is distinguishable. The agency's May 24 letter was not a Statement of Charges, but an explanation of why ANH was assigned as Priority 3 to receive a cannabis license. ANH had filed a challenge to the Priority determination under RCW 34.05.413. In *Hutmacher*, it was the agency who filed a disciplinary action against the nurse. This is not a disciplinary action requiring a statement of charges; the action here was initiated by the applicant. Accordingly, *Hutmacher* is inapplicable.

ii. *30-Day Deadline under RCW 34.05.419(2)*

ANH also appears to argue that the agency failed to satisfy the APA's 30-day requirement imposed under RCW 34.05.419(2). We disagree.

19

The APA provides:

(1) Except in situations governed by subsection (2) . . . of this section, within ninety days after receipt of the application or of the response to a timely request made by the agency under subsection (2) of this section, the agency shall . . . (b) Commence an adjudicative proceeding in accordance with this chapter . . . .

(2) Within thirty days after receipt of the application, the agency shall examine the application, notify the applicant of any obvious errors or omissions, request any additional information the agency wishes to obtain and is permitted by law to require, and notify the applicant of the name, mailing address, and telephone number of an office that may be contacted regarding the application . . . .

RCW 34.05.419(1), (2).

ANH argues that the May 24, 2016 Statement of Intent could not satisfy both the 30-day requirement of RCW 34.05.419(2) and the 90-day requirement of subsection (1). It argues that one letter fulfilling both requirements would render RCW 34.04.419(1)'s 90-day requirement superfluous. But that is not what happened here.

Here, the agency's May 24 Statement of Intent was an explanation of its Priority 3 determination as requested by ANH. It did not serve as a notification under RCW 34.04.419(2) because subsection (2) applies only when an agency requires more information from the applicant to initiate the proceeding. Indeed, subsection (2) applies only where subsection (1) does not because subsection (1) states it applies "[e]xcept in situations governed by subsection (2)." Thus the 30-day deadline does not apply here.

b. *June 17, 2016 Letter and July 12, 2016 E-mails*

ANH argues that the Board erred when it ruled that the agency commenced the adjudicative proceeding with its June 17, 2016 letter. ANH also appears to argue that the July 12 emails it exchanged with the agency did not commence an adjudicative proceeding under RCW 34.05.413(5). The agency argues that the Board properly ruled that it commenced adjudicative

20

proceedings on June 17. We hold that the July 12, 2016 emails commenced the adjudicative proceedings.

Under RCW 34.05.413(5), "[a]n adjudicative proceeding commences when the agency or a presiding officer notifies a party that a prehearing conference, hearing, or other stage of an adjudicative proceeding will be conducted." When interpreting a statute, we determine legislative intent from the plain language and ordinary meaning of the statute. *City of Spokane*, 158 Wn.2d at 673. Our inquiry ends where a statute is plain and unambiguous. *HomeStreet, Inc.*, 166 Wn.2d at 451.

The interpretation of RCW 34.05.413 as it applies to license applicants and agency timeliness is a matter of first impression before us. Neither ANH nor the agency cite any relevant cases to support their arguments regarding RCW 34.05.413(5).

The June 17 letter read, in pertinent part, "This letter is being sent to you to acknowledge receipt of a request for a hearing. The matter is being forwarded to the Office of the Attorney General." CP at 388. The letter advised ANH only that the agency received ANH's request for a hearing and which office ANH could expect to hear from. It did not mention or notify ANH of any adjudicative proceeding, nor any conference, prehearing, schedule, or potential schedule. There was no language in the letter that suggested that any "other stage of an adjudicative proceeding will be conducted." RCW 34.05.413(5).

The agency argues that the June 17 letter commenced an adjudicative proceeding because it assigned a Liquor and Cannabis Board case number and informed ANH that its request was being forwarded to the AGO. The agency argues that forwarding the matter to the AGO constituted a "stage of an adjudicative proceeding." But the agency had already assigned ANH a

21

case number, as displayed on its May 24 Statement of Intent. Even then, it would have been possible for the agency to assign a case number and never proceed to schedule a hearing or other proceeding. Thus, assigning a case number was not an "other stage of an adjudicative proceeding."

Likewise, informing ANH that the matter was being forwarded to the AGO signals nothing to ANH regarding an adjudicative proceeding. The agency explains that referral to the AGO is an "essential step" in proceeding towards adjudication because the AGO then sends the case to the Office of Administrative Hearings (OAH), who then assigns an ALJ. But forwarding the case to the AGO did not signal a step towards an adjudicative proceeding. It provided no notice to ANH that an adjudicative hearing was forthcoming. Thus, the June 17 letter did not clearly notify ANH that a stage of an adjudicative proceeding was going to be conducted. Accordingly, the June 17 letter did not commence an adjudicative proceeding under RCW 34.05.413(5).

However, on July 12, ANH emailed the agency and asked if a hearing date had been scheduled. The agency responded:

> No . . . there is no hearing scheduled in this case. Cases are typically evaluated and scheduled as soon as possible within the competing priorities, and I know of no reason for inordinate delay in this case. As soon as OAH assigns a date, I'm sure you'll be contacted.

CP at 420.

Although this correspondence does not schedule a stage of an adjudicative proceeding, it does notify ANH of the next stage in the adjudicative process. Crucially, RCW 34.05.413(5) states that an adjudicative proceeding commences when an agency notifies a party "that" a stage of an adjudicative proceeding will be conducted, not "when" it will be conducted. The agency's

22

email does so by informing ANH (1) what may be causing any delay in scheduling (2) that inordinate delay is not expected, (3) that ANH will be contacted when its case is scheduled, and (4) who will be contacting it (OAH). It notifies ANH what the next stage of the adjudication will be—in this case, the first stage. Thus, the agency's email notified ANH that a stage of an adjudicative proceeding would be conducted. RCW 34.05.413(5). Therefore, we hold that the July 12 email commenced the adjudicative proceeding for the purposes of RCW 34.05.413(5).

As explained in Part 1 above, ANH's May 4 email started the 90-day window for the agency to act under RCW 34.05.419(1). July 12 is within 90 days of May 4. Thus, the agency timely commenced an adjudicative proceeding under RCW 34.05.419(1)(b).[8]

C.      *Cannabis License Requirements under Former RCW 69.51A.085 (2011) and Former WAC 314-55-020 (2015)*

ANH next argues that the Board erred when it adopted the agency's interpretation of former RCW 69.51A.085 and former WAC 314-55-020 in its March 2017 final order. ANH argues that it was denied Priority 1 determination because the Board erroneously held that Yi had to show commercial and business activity for the Healing Center of Tacoma. We disagree.

We interpret the meaning of a statute de novo, and where a statute is ambiguous, we defer to the agency's interpretation of a statute within its expertise. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004). When reviewing an agency's decision under the APA, we review the Board's legal conclusions de novo under the "error of law"

---

[8] ANH also appears to argue that the actions of an assistant attorney general may not commence an adjudicative proceeding because "attorney general" is excluded from the definition of "agency" in the APA. But just because the AGO is not an agency for the purposes of the APA does not mean that they cannot do business on behalf of an agency or the OAH.

standard, not the ALJ's or the superior court's ruling, and we may substitute our view for that of the Board. *Marcum*, 172 Wn. App. at 559; RCW 570(3)(d). We review all facts in the administrative record de novo and we will uphold the Board's factual findings if supported by substantial evidence. *City of Seattle*, 13 Wn. App. 2d 831, 853, 468 P.3d 637 (2020); *Marcum*, 172 Wn. App. at 560.

Former RCW 69.51A.085 governed collective cannabis gardens.[9] Collective gardens existed under the medical cannabis statutes. *See* Former Chapter 69.51A RCW (2011). Collective gardens existed "for the purpose of producing, processing, transporting, and delivering cannabis for medical use." Former RCW 69.51A.085(1) (2011). However, the statute limited collective gardens to certain conditions, including: "No useable cannabis from the collective garden is delivered to anyone other than one of the qualifying patients participating in the collective garden." Former RCW 69.51A.085(1)(e) (2011).

Former RCW 69.50.331 governed applications for cannabis licenses and divided applicants into three priorities. Former RCW 69.50.331 (2015). Priority 1 was given to applicants who:

> (A) Applied to the state liquor and cannabis board for a marijuana retailer license prior to July 1, 2014; (B) Operated or were employed by a collective garden before January 1, 2013; (C) Have maintained a state business license and a municipal business license, as applicable in the relevant jurisdiction; and (D) Have had a history of paying all applicable state taxes and fees.

---

[9] The parties rely on the 2011 version of the statute, available at https://leg.wa.gov/CodeReviser/RCWArchive/Documents/2011/Vol11B/2-11BSuppBody.pdf. It was repealed effective July 1, 2016. Laws of 2015, ch. 70, § 49.

Former RCW 69.50.331(a)(i).  In 2015, the agency updated its regulations to align with the switch from medical to recreational cannabis use under former RCW 69.50.331 (2015).  WSR 15-19-165.

Former WAC 314-55-020 added clarity to the agency's priority determination rankings. The regulation explained that for a Priority 1 determination, applicants must have, among other things:

> (ii) Owned or were employed by a collective garden before January 1, 2013.  To meet this qualification, the applicant must provide the [Board] a copy of the master business license from department of revenue business licensing services showing the applicant owned a collective garden prior to January 1, 2013, or a pay stub or tax information indicating that the applicant was employed by a collective garden prior to January 1, 2013;
>
> (iii) Have maintained a state business license and municipal business license, as applicable in the relevant jurisdiction.  To meet this qualification, the applicant must provide the [Board] a copy of the master business license from department of revenue business licensing services and copies of municipal business licenses from January 1, 2013, through the date of application; and
>
> (iv) Have had a history of paying all applicable state taxes and fees.  To meet this qualification, the applicant must provide the [Board] evidence from the department of revenue that *the entity is up to date on all applicable state taxes* since January 1, 2013, and that they have paid all applicable fees to the [Board] for all businesses they are engaged in since January 1, 2013.

Former WAC 314-55-020(3)(a) (emphasis added).

The first step to achieving a Priority 1 determination, then, was for the applicant's previous employer or entity to qualify as a collective garden under former RCW 69.51A.085. Former RCW 69.51A.330(a)(i)(B); Former WAC 314-55-020(3)(a)(ii).  This required the applicant's previous employer to not deliver usable cannabis "to anyone other than one of the qualifying patients participating in the collective garden."  Former RCW 69.51A.085(1)(e) (2011).

25

The Healing Center of Tacoma, Yi's employer and ANH's previous entity for application purposes, delivered cannabis to other collective gardens. Thus, The Healing Center of Tacoma was not operating under the requirements of, and did not qualify as, a collective garden as required by former RCW 69.51A.085(1)(e). Accordingly, on this basis alone, ANH would not have qualified for a Priority 1 determination.

The next step to achieving a Priority 1 determination was for the previous entity to have maintained state and municipal business licenses before January 1, 2013, through the application date. Former RCW 69.50.331(a)(i)(C); Former WAC 314-55-020(3)(a)(iii). The Healing Center of Tacoma did not operate as a business before 2016, and the record is silent as to it ever holding or maintaining any municipal business license. Thus, under this step, ANH would not have qualified for a Priority 1 determination.

The previous entity must also provide the agency "evidence from the department of revenue that *the entity* is up to date on all applicable state taxes since January 1, 2013." Former WAC 314-55-020(3)(a)(iv) (emphasis added). ANH listed The Healing Center as its previous collective garden entity in its application. But The Healing Center did not pay taxes during the statutory period prior to ANH's application. hus, even if Yi and his LLC, Natural 7, paid taxes, the designated entity, The Healing Center of Tacoma, did not. Accordingly, for any one of these reasons, ANH was not eligible for a Priority 1 determination under the statutory and regulatory licensing scheme then in place.

ANH argues that collective gardens need not be commercial in nature, citing *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 230, 351 P.3d 151 (2015). It is true that under *Cannabis Action Coalition* and Former RCW 69.51A.085 a collective garden need not be

commercial in nature or operate as a business. 183 Wn.2d at 230. But *Cannabis Action Coalition* does not apply here because there no party sought to produce marijuana under the recreational scheme. 183 Wn.2d at 222. Moreover, ANH's argument ignores former RCW 69.51A.330, which specifically requires that a prerequisite for a recreational license is for the predecessor entity to operate as a business.[10]

In its March 2017 initial order, the ALJ concluded that the agency correctly determined that the Healing Center of Tacoma did not qualify as a collective garden as defined in former RCW 69.51A.085. The ALJ therefore concluded that ANH did not qualify for Priority 1. The Board adopted the ALJ's findings and conclusions.

The Board's adoption of the agency's interpretation of former RCW 69.51A.330 and former WAC 314-55-020 was not in error. The language of the statute was clear and unambiguous, and, as applied, provided more than one reason for the agency to not assign ANH as Priority 1. Accordingly, ANH's argument that the only reason it was denied Priority 1 was due to the agency's erroneous determination that it had to show commercial activity is flawed.[11]

D.     *Substantial Evidence*

ANH further argues that the Board's March 2017 final order was not supported by the evidence. We disagree.

---

[10] In other words, collective gardens did not have to operate as businesses to deliver medical cannabis to members, but they did have to operate as a business to transfer to recreational dispensaries.

[11] ANH also cites multiple United States Supreme Court cases to support its argument. However, these cases all interpret and apply the federal APA and are not applicable to our state scheme. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S. Ct. 454, 459, 87 L. Ed. 626 (1943); *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50, 103 S. Ct. 2856, 2870, 77 L. Ed. 2d 443 (1983).

We will uphold the Board's factual findings if supported by substantial evidence. *Marcum*, 172 Wn. App. at 560. We review the Board's legal conclusions de novo under the "error of law" standard, and we may substitute our view for that of the Board. *Marcum*, 172 Wn. App. at 559; RCW 570(3)(d).

Although, as explained in section I.B *supra*, the Board erred in its conclusions of law when it ruled that ANH requested the adjudicative proceeding on June 15, 2016, and that the agency commenced the adjudicative proceeding on June 17, the Board's findings were supported by the record. ANH's completed agency-provided Request for Hearing form was received by the agency on June 15. The agency responded with a letter acknowledging its receipt of that form on June 17. These documents were in the record before the Board. Additionally, as explained above, the record supports a determination that a Priority 1 determination was not appropriate. Accordingly, ANH's argument that the Board's findings of fact were not supported by the evidence fails. And although the conclusions of law regarding the commencement of the hearing were erroneous, that error was harmless because the hearing was held within the statutory guidelines.

E.      *Arbitrary and Capricious*

ANH argues that the Board's March 2017 final order and the agency's Priority 3 determination were arbitrary and capricious. We disagree.

We review whether an agency decision was arbitrary and capricious de novo. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003). An agency's action is arbitrary or capricious if it "'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" *Wash. Indep. Tel.*, 149 Wn.2d at 26 (quoting

28

*Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002) (internal quotation marks omitted)). Even if we believe an action to be in error, where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious. *Pac. Coast Shredding, LLC v. Port of Vancouver*, 14 Wn. App. 2d 484, 502, 471 P.3d 934 (2020). "Neither the existence of contradictory evidence nor the possibility of deriving conflicting conclusions from the evidence renders an agency decision arbitrary and capricious." *Pac. Coast Shredding*, 14 Wn. App. 2d at 502 (quoting *PacifiCorp v. Wash. Utils. & Transp. Comm'n*, 194 Wn. App. 571, 587, 376 P.3d 389 (2016) (internal quotation marks omitted)).

Neither the agency's Priority 3 determination nor the Board's March 2017 final order were arbitrary or capricious. Both decisions were made after a review of the record and supported by factual and legal conclusions based on the record before them. ANH does not show that the agency or Board made any decision in disregard of the facts in the record or attendant circumstances. ANH merely re-alleges its argument that the Board's final order was not supported by the evidence with no further analysis. This argument fails.

## II. ALL NATURAL HERBS' CONSTITUTIONAL CLAIMS

ANH makes a multitude of constitutional arguments. ANH argues that the agency violated its rights under the First and Fourteenth Amendments to the U.S. Constitution and that RCW 34.05.419 and former WAC 314-55-020 are unconstitutional as applied. ANH argues that the agency violated ANH's due process rights because it did not initiate a timely adjudicative proceeding. ANH also argues that the Board's remand of the matter to the agency in its March 2017 final order was an unconstitutional "do over." ANH then argues that RCW 34.05.419 and former WAC 314-55-020 are unconstitutional as applied. ANH next argues that the Board's

final order and remand was an unlawful prior restraint under the First Amendment. Finally,

ANH argues that the agency violated ANH and Yi's equal protection rights by discriminating

against Yi based on race.[12] We determine that neither the agency nor the Board violated the

constitution in assigning ANH as Priority 3 and remanding the adjudicative proceedings to the

agency.

A.      *Due Process*

ANH makes two related due process arguments: that the agency failed to commence

adjudicative proceedings within 90 days, thus violating ANH's due process rights, and that the

Board's subsequent remand to the agency was unconstitutional. We disagree.

1. *There is No Protected Property Interest in the Issuance of a Marijuana License.*

ANH argues that the agency did not follow the procedures in the APA and failed to meet

its 90-day deadline. For the reasons explained in Part I *supra*, we disagree. The agency timely

commenced an adjudicative proceeding when it notified ANH of a stage of an adjudicative

proceeding under RCW 34.05.419. Moreover, ANH does not have a protected liberty or

property interest in an unissued license.

To establish a due process violation, ANH must show it was deprived of a

constitutionally protected liberty or property right. *Haines-Marchel v. Liquor & Cannabis Bd.*,

1 Wn. App. 2d 712, 742, 406 P.3d 1199 (2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332,

96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). Applicants for a marijuana license do not have a property

interest in the issuance of the license. 1 Wn. App. 2d at 743. Thus, in *Haines-Marchel*,

---

[12] Yi is not a party to this case. Even assuming that ANH could assert rights personal to Yi, its arguments nonetheless fail.

Division I of this court held that the agency did not violate due process when it denied the application for a license. 1 Wn. App. 2d at 743.

In the same way, ANH's due process rights were not violated when it was assigned Priority 3 because it has no property interest in the issuance of a marijuana license, much less a Priority 1 designation. Thus, ANH has failed to establish a due process violation.

2. *A Remand is not an Unconstitutional Repeat of an Invalid Hearing.*

ANH argues that the Board's March 2017 final order remanding the matter to the agency to consider any additional documentation and again determine ANH's priority violated due process because it was an unlawful de facto dismissal of ANH's request for adjudicative proceeding. ANH argues this resulted in an unconstitutional "do over," a "gross due process violation," and "post hoc rationalization." Br. of Appellant at 41-42. We disagree.

Under the APA, an agency may appoint persons to review initial orders and enter final orders. RCW 34.05.464(2). On review, "[t]he reviewing officer shall enter a final order disposing of the proceeding or remand the matter for further proceedings, with instructions to the presiding officer who entered the initial order. Upon remanding a matter, the reviewing officer shall order such temporary relief as is authorized and appropriate." RCW 34.05.464(7).

This is exactly what the Board did. The Board remanded to the Licensing Division of the agency "for consideration of the documents provided by the Applicant, as potentially supplemented during the hearing process, for a new priority determination and notice of hearing rights, if appropriate." CP at 472-73. This was not a limitless remand where discovery and other procedures were re-opened. It was not a "post hoc rationalization" of agency action as ANH contends. Indeed, the Board sent the matter back to the agency for *further* action because of the

31

large record and new documents ANH provided. A remand for an agency to reconsider a licensing determination, and ordering it to review the record as supplemented during hearings held since the initial proceeding, is not a due process violation. ANH's claim was not dismissed, it was merely remanded to the agency for further review.

B. *Constitutionality of RCW 34.05.419 and Former WAC 314-55-020 As Applied*

ANH argues that RCW 34.05.419, concerning agency action on applications for adjudication, and former WAC 314-55-020 are unconstitutional as applied in the Board's March 2017 final order. ANH contends that the statute and regulation violate due process when an agency does not commence an adjudicative proceeding within 90 days and thus deprived ANH of a meaningful opportunity to be heard. This argument fails.

We review constitutional challenges de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004). As-applied challenges to the constitutionality of a statute arise when a party alleges that application of a statute in a specific context violates the constitution. *Moore*, 151 Wn.2d at 668-69. "Holding a statute unconstitutional as-applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated." *Moore*, 151 Wn.2d at 669.

First, ANH's argument fails because the agency commenced an adjudicative proceeding within 90 days. Second, an as-applied challenge under the due process clause of the Fourteenth Amendment triggers analysis of the agency's action under the procedural due process test. *See Didlake v. State*, 186 Wn. App. 417, 425, 345 P.3d 43 (2015). Thus, ANH must show it has a protected property interest before we can analyze whether ANH was deprived of a meaningful opportunity to be heard. *Didlake*, 186 Wn. App. at 425-26. As explained above, there is no

32

property interest in the issuance of a marijuana license. *Haines-Marchel*, 1 Wn. App. 2d at 743.

Accordingly, ANH's as-applied challenge fails.

C.      *Prior Restraint in an Administrative Remand*

ANH next argues that the Board's March 2017 final order was an unconstitutional prior

restraint under the First Amendment. We disagree.

Our Supreme Court has adopted the United States Supreme Court's definition of prior

restraint as

> administrative and judicial orders forbidding certain communications when issued
> in advance of the time that such communications are to occur. . . .   Temporary
> restraining orders and permanent injunctions—i.e., court orders that actually forbid
> speech activities—are classic examples of prior restraints.

*In re Marriage of Suggs*, 152 Wn.2d 74, 81, 93 P.3d 161 (2004) (quoting *Alexander v. United*

*States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d. 441 (1993)).

ANH cites no case for the proposition that an order remanding an administrative

proceeding is a prior restraint. Where a party does not cite to authority, we assume there is none.

*Kirby v. State Dep't of Emp't Sec.*, 185 Wn. App. 706, 728, 342 P3.d 1151 (2014).

Furthermore, for an administrative order may rise to the level of a prior restraint, it must

forbid speech activities. *Suggs*, 152 Wn.2d at 81. There is nothing in the Board's March 2017

final order that restricts ANH's speech. Indeed, the Board explained that ANH had "opportunity

to again request a hearing if so desired." CP at 473. Thus, ANH does not show any prior

restraint and we conclude there was no First Amendment violation.[13]

---

[13] ANH states that it was "barred by court order from petitioning the government for a
grievance." Br. of Appellant at 45. ANH repeatedly cites to the Administrative record at "1390-
1354." But a review of our record on appeal at 1354 through 1390 reveals no such court order.

D.      *Equal Protection*

ANH argues that the agency violated ANH and Yi's equal protection rights because it assigned ANH Priority 3 based on race discrimination aimed at Yi. We disagree.[14]

A classification assigned by the government will be upheld "'unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.'" *State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992) (quoting *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990)). The burden is on the party alleging discrimination to challenge the classification. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 972, 977 P.2d 554 (1999). Our level of scrutiny depends on the nature of the classification or rights involved. *State v. Johnson*, 194 Wn. App. 304, 307, 374 P.3d 1206 (2016). "Strict scrutiny applies if the classification is based on a suspect class, such as race, nationality, or alienage, or if it affects a fundamental right." *Johnson*, 194 Wn. App. at 307. We apply intermediate scrutiny where important or "semisuspect" classifications are involved. *Johnson*, 194 Wn. App. at 307. Absent these, a law or government action receives rational basis review. *Johnson*, 194 Wn. App. at 308.

In analyzing an equal protection claim, we first determine whether there is any evidence of race-based decision-making or discriminatory intent. *Johnson*, 194 Wn. App. at 308. Where a party does not demonstrate discriminatory intent, we need not even engage in rational basis review because the government action does not rise to the level of violating equal protection. *Johnson*, 194 Wn. App. at 309.

---

[14] Yi was not a party to the administrative action, and ANH does not explain how it can assert Yi's personal equal protection rights.

ANH must show discriminatory intent or race-based decision-making to assert an equal protection claim. ANH shows no reasoned explanation or analysis but merely states in conclusory fashion that because Yi is Korean-American, and because entities with Caucasian owners received licenses before ANH, that there must have been race-based decision making. But ANH points to no facts in the record that support its contention that the agency engaged in race-based decision-making. Indeed, when asked about testimony that showed race did not play a role in the agency's decision, Yi responded, "I'm not claiming that race played a role." AR at 657.

There are any number of reasons why the agency may have granted licenses to other entities before ANH, but those licensing decisions are not in the record. Only the agency's determination for Yi and ANH is in the record. The record shows no discriminatory intent or race-based decision-making and ANH points to none. Thus, ANH cannot establish the first step in its equal protection claim, and we need not engage in rational basis review because the government action does not rise to the level of violating equal protection.

### III. VOIDNESS OF BOARD'S 2018 FINAL ORDER

ANH argues that the ALJ's May 31, 2018 initial order and the Board's July 24, 2018 final order are void because of the agency's due process violations. We disagree and hold that they are not, and affirm the Board's July 24, 2018 final order.

ANH cites to no authority explaining how an adjudicative order following a lawful remand is void, so we assume there is none. *Kirby*, 185 Wn. App. at 728. As explained in Part I, *supra*, the agency timely commenced an adjudicative proceeding. The Board reviewed the agency's decision and lawfully remanded the matter to the agency for review as permitted under

35

RCW 34.05.464. The agency then reviewed the record and again assigned a Priority 3 determination. On review, an ALJ affirmed the Priority 3 determination in its May 2018 initial order. The Board affirmed the Priority 3 determination in its July 2018 final order. Because the Board's July 2018 final order is not void and is not otherwise contested, we find no error in its determinations.

## ATTORNEY FEES

ANH argues that it should be awarded attorney fees and costs on appeal. We disagree.

> [A] court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

RCW 4.84.350(1).

ANH does not prevail on a significant issue. Although we substitute our view for that of the Board on several issues ANH raised, ANH does not prevail on overturning its Priority determination or gaining licensure. Thus, we do not award fees.

## CONCLUSION

We hold that the agency timely commenced an adjudicative proceeding under RCW 34.05.413 and 34.05.419. We also hold that the agency and Board properly interpreted former RCW 69.51A.085 and former WAC 314-55-020, and that the Board's orders were supported by the record and the agency's determination was not arbitrary and capricious.

None of ANH's constitutional challenges succeed. ANH's due process claims fail because it has no property interest in the issuance of a marijuana license. We hold that the Board's lawful remand was constitutional. We also hold that ANH's prior restraint claim fails

because there was no restraint. Likewise, we hold that ANH's equal protection claim fails because it cannot show discriminatory intent or race-based decision-making.

The agency's second Priority determination from April 2017 was valid and the Board's order affirming that decision is not void. Accordingly, we affirm the Board's July 2018 final order. Finally, because ANH does not prevail on a significant issue, we do not award fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Veljacic, J.